**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**(Southern Division)**

| | |
|---|---|
| _____ * | |
| Collective Shared Services, LLC * | |
| 108 West 13th Street * | |
| Wilmington, DE 18801 * | |
| (Sole member Maryland resident (Montgomery)) * | |
| * | Civil Action No._____ |
| Plaintiff, * | |
| * | |
| * . | |
| v. * | |
| * | |
| CPDA Canvass Network, LLC * | |
| 449 Troutman Ave., Suite A * | |
| Brooklyn, NY 11237 * | |
| * | |
| -and- * | |
| * | |
| Center for Popular Democracy Action Fund, * | |
| Inc., * | |
| * | |
| 449 Troutman Ave., Suite A * | |
| Brooklyn, NY 11237, * | |
| * | |
| Defendants. * | |
| _____ * | |

**COMPLAINT**
**(Breach of Contract; Constructive Fraud)**

COMES NOW Plaintiff Collective Shared Services, LLC ("CSS") by and through

undersigned counsel, and brings this Complaint against Defendant CPDA Canvass Network,

LLC ("CPDA Canvass") and Center for Popular Democracy Action Fund, Inc. ("CPDA") for

breach of a contract between CSS and CPDA Canvass and for constructive fraud.

## I.     PARTIES

1.     Plaintiff Collective Shared Services, LLC ("CSS"), is a limited liability company, organized in Delaware, that is registered to do business in Maryland and that provides services to its clients in the form of comprehensive solutions for managing payroll and related human resources functions in support of each client's progressive mission. Its sole member, Melvin Duane Stillwell, is a citizen and resident of the State of Maryland.

2.     Defendant CPDA Canvass Network, LLC ("CPDA Canvass") is a limited liability company that is organized in Colorado and with its principal office located at 449 Troutman Ave, Suite A, Brooklyn, NY 11237. CPDA Canvass is a citizen of the State of New York.  CPDA Canvass purports to carry out door-to-door canvasses to organize citizen support for progressive causes and organizations, including other, independent nonprofit organizations based throughout the country that it treats as its "affiliates."

3.     Defendant Center for Popular Democracy Action Fund, Inc. ("CPDA") is a nonprofit corporation incorporated in the State of New York, with its principal place of business in Brooklyn, New York, at the same address as CPDA Canvass.  CPDA claims exemption from taxation as a social welfare organization under section 501(c)(4) of the Internal Revenue Code of 1986 as amended.  CPDA is a citizen of the State of New York.

4.     On the Articles of Organization of CPDA Canvass, filed with the Colorado Secretary of State, CPDA is listed as the sole entity that formed CPDA Canvass as a limited liability company in December 2017.  On information and belief, CPDA Canvass' sole member is CPDA.

5.      In its Answer and Counterclaims filed in the related case of *Collective Shared Services, LLC v. CPDA Canvass, LLC*, No. 19-cv-01208-GJH (D. Md.), CPDA Canvass characterized CPD as its "parent company." ECF No. 5 at 4.

6.      CPDA  purports to carry out door-to-door canvasses to organize citizen support for progressive causes and organizations, including other, independent nonprofit organizations based throughout the country that it treats as its "affiliates."


## II.      <u>JURISDICTION AND VENUE</u>

7.      This Court has  subject matter jurisdiction of this action under 28 U.S.C. §1332(b) because there is complete diversity of citizenship between the parties and the amount in controversy exceeds $75,000.

8.      This Court has personal jurisdiction over CPDA Canvass because CPDA Canvass consented, in the contract between CSS and CPDA, to subject to itself to the personal jurisdiction of the Maryland state courts in any action relating to that contract.  *See* Contact attached as Exhibit 1; *Dynacorp Ltd. v. Aramtel Ltd.*, 208 Md. App. 403, 477, 56 A.3d 631, 675 (2012).

9.      This Court has personal jurisdiction over CPDA because, as alleged below, CPDA Canvass is the alter ego of CPDA and therefore CPDA is bound by the terms of the same contract.

10.      Venue is proper in this district pursuant to 28 U.S.C. §1391 because CPDA Canvass consented to the personal jurisdiction of this Court.

### III.   FACTUAL ALLEGATIONS

11.    On or about March 5, 2018, CPDA Canvass entered into a contract that CSS would assume responsibility as administrative employer of certain individuals working as canvassers for CPDA-sponsored projects, going door to door or standing in public places to try to persuade members of the public to express views or take action on policy or legislative actions and/or to register to vote and to get out to vote. A copy of that contract (the "Contract") is attached hereto as Exhibit 1.

12.    CSS' responsibilities included making wage and salary payments, determining and remitting taxes under applicable law, providing and administering health and welfare benefits for a limited number of staff, providing workers' compensation coverage and paying unemployment insurance premiums, among other services.

13.    Performance of the Contract  required that CPDA Canvass  provide timely and accurate information to CSS about CPDA Canvass' workers working on each project, including documents required to onboard employees such as the IRS Form W-4 and the USCIS Form I-9 (proper in-person completion of which could only be accomplished by CPDA staff), and, during each pay period, reporting the number of hours worked by each employee and any employment changes, bonuses or expenses.  The Contract by its terms required that CPDA Canvass pay advance retainers for the amount of payroll and associated payroll burden costs for the employees for each project respectively; that such retainers would be paid prior to the date on which CSS was to make disbursements on behalf of CPDA Canvass; and that invoices for all such costs be timely paid.

14.     Prior to entering the Contract, CPDA represented to CSS that CPDA Canvass would be able to provide the necessary information and funds, in a timely manner, for CSS to perform its obligations under the Contract, on an ongoing basis.

15.     CPDA had gained CSS' confidence that CPDA and CPDA Canvass could perform its obligations to provide necessary information and funds, and CSS depended on CPDA and CPDA Canvass to perform those obligations. Not only CSS' ability to perform the contract, but the welfare of the employees—their ability to receive their salaries and wages on time and have their tax records be accurate and complete-- depended on  compliance by CPDA Canvass and CPDA with these obligations.

16.     Although the Contract was entered into by CPDA Canvass, the individual managers  responsible for actually performing  CPDA Canvass'  operations under the Contract were all officers and/or employees of CPDA and CPDA affiliates.  The funds  remitted to CSS came from the accounts of CPDA.

17.      The parties modified certain of the terms of the Contract through practice.  CPDA Canvass was obligated to advance the necessary funds to CSS.  In practice, the invoices for the costs of payroll were always and could only be sent after the payroll was expended. CSS also provided, at the request of CPDA Canvass, periodic accountings of costs and payments.

18.      As noted, CPDA  field managers and CPDA affiliate staff were obligated to confirm and approve required employment forms as employees were hired, including the Form W-4, I-9 and direct deposit authorizations. CPDA Canvass, CPDA  and various of their field managers repeatedly failed or refused to provide, confirm and/or approve the required

forms. On information and belief, CPDA feared pressing its affiliates to meet their obligations and found it easier to blame or harass CSS for CPDA's own failings.

19.    CSS  paid canvassers each Friday.  CPDA/CPDA Canvass field managers and affiliates were obligated to, but often failed, to report to CSS the hours worked by each canvasser the Monday preceding the Friday on which wages and salaries were to be paid. CPDA Canvass even failed to timely submit to CSS the first payment due under the Contract—covering payroll, employers' share of withholdings and payroll taxes and fees—and then repeatedly failed to make these payments in advance or to timely pay invoices as required under the Contract.

20.    CSS never missed a payday: while the Contract was in effect, no canvasser went unpaid.  CSS always paid canvassers even when the actions of CPDA and CPDA Canvass—failure to advance funds and failure to provide forms and information--  made that extremely difficult.   CSS went so far as to pay canvassers using wire transfer, prepaid debit card or Western Union, when necessary based on estimated amounts, later reconciled for tax purposes.

21.    CSS was never repaid for approximately $300,000 of its own funds spent in this way under this Contract.

22.    CSS informed CPDA and CPDA Canvass on several occasions when CPDA Canvass had failed to perform its obligation to advance the necessary funds to CSS, that CSS might not be able to make payroll.  But in fact, the advances, by their very nature, never depended on the issuance of invoices, which were sent after the payroll was expended.

23.    CPDA encouraged its affiliates to disrupt CSS' ability to calculate payroll by failing and refusing to provide timely and accurate initial documentation needed to hire

canvassers and then failing and refusing to provide, in a timely way, accurate information about hours worked for each worker.

24.     Ultimately CPDA Canvass' breaches of the Contract created impossible operational and financial burdens for CSS and greatly burdened CSS' ability to service other clients. As a result, in October 2018, CSS terminated the Contract.

25.     However, even after the termination of the Contract, when it appeared CPDA had no plan or willingness to compensate certain staff, CSS made every effort to see that no staffer was adversely affected or unpaid.

26.     On information and belief, after the Contract was terminated, CPDA and CPDA Canvass collaborated with another CSS client, Community Labor Services Administration, Inc. ("CLASI") to secretly put CPDA's terminated  workers on the list of CLASI staff  that CSS was paying under a separate agreement with CLASI.

27.     After termination of the Contract,  CPDA Canvass had not only been repeatedly late in paying CSS but had failed entirely to pay approximately $300,000 that it owed to CSS under and pursuant to the Contract, including numerous open undisputed invoices.  Those amounts remain due and owing to CSS as of the date of the filing of this Complaint.

28.     In addition, as a result of the breach of the Contract by CPDA Canvass, specifically, the failure and refusal to provide timely payroll funding and employment information, CPDA Canvass as a responsible party  is responsible for payments due to the Social Security Administration, Internal Revenue Service and state tax authorities for late fees and penalties, for failure to remit and/timely remit payroll withholdings.

29.     After the Contract was terminated, CPDA asked CSS  to reinstate the entire Contract, evidencing complete satisfaction with CSS services, so that a worker seriously

injured in Michigan could receive workers compensation benefits: after the contract was terminated, CPDA improperly chose to classify this and other similarly situated works as independent contractors. CSS was amenable to helping even though it remained largely unpaid, but CPDA refused CSS's terms: that all such workers be identified and covered as employees so that CSS could maintain compliance with state and federal regulatory obligations. CPDA refused, claiming that CSS actually just wanted to "identify the competition" where CPDA had placed or hidden other workers as independent contractors.

### COUNT I—BREACH OF CONTRACT (All Defendants)

30.    Plaintiff repeats and realleges all of the allegations of paragraphs 1 through 29 as if fully set forth herein.

31.    CPDA Canvass materially and repeatedly breached the Contract by failing to provide necessary information when needed and by failing to make payments to CSS when due under the Contract.

32.    As a result of the material breaches of the Contract by CPDA Canvass, CSS has suffered  actual damages in the amount that CPDA was obligated under the Contract to advance or reimburse CSS, but never did, in the amount of approximately $300,000.

33.    CPDA officers acting in that capacity defrauded CSS by misrepresenting CPDA Canvass' ability to provide the necessary information and documents in a timely way, in order to induce CSS to enter a contract with CPDA Canvass rather than with CPDA directly.

34.    The individuals who caused CPDA Canvass to breach the Contract, and who induced staff of affiliates to interfere with CSS' ability to calculate payroll, were officers or employees of CPDA, acting in that capacity.

35.     CPDA Canvass had no management staff of its own, but relied entirely on the staff of CPDA with respect to oversight and management of the canvassing operations for which CSS was engaged as administrative employer, including providing information and documents necessary to onboard employees and calculate payroll.

36.     The payments that were made to CSS under the Contract were in fact made by CPDA, in the form of CPDA checks or wire transfers identified as coming from CPDA's bank account(s).  No payment was ever received from CPDA Canvass itself.

37.     All decisions and communications relating to performance of the Contract and the operations on which the employees worked, were made by CPDA staff.  No individual ever identified themselves to CSS as an employee or agent of CPDA Canvass.  Based on the facts alleged in paragraphs 35 and 36, and on information and belief, CPDA Canvass had no assets, funds or property of its own, ever.

38.     On information and belief, CPDA knew at all times while the Contract was in effect the number of hours and payroll costs being accrued each week.  This data, which was made available through CPDA's vendor Membership Drive, though fundamentally flawed and inaccurate, provided CPDA with a running tally of the costs incurred by CSS.  CPDA was also aware of what it had paid and not paid.  Accordingly, CPDA had actual knowledge that neither CPDA nor CPDA Canvass was paying what was owed to CSS under the Contract.

39.     Based on the facts alleged in paragraphs 33-38, CPDA was the alter ego of CPDA Canvass and is liable for the breach of the Contract by CPDA Canvass.

## COUNT TWO—CONSTRUCTIVE FRAUD.

40.     Plaintiff repeats and realleges all of the allegations of paragraphs 1 through 39 as if fully set forth herein.

41.     CSS necessarily reposed trust and confidence in CPDA that, in order to be able timely to pay salary and benefits for the workers formally employed by CSS but carrying out the program of CPDA, CPDA Canvass would perform its obligations to provide CSS with documentation for the workers and information about the workers' hours in a timely way; and would make available to CSS the funds necessary to pay the workers and make required tax deposits and withholdings.

42.     Based on representations made before the Contract was entered and while it being performed, CPDA and CPDA Canvass gained CSS' trust and confidence and CSS necessarily reposed trust and confidence in the good faith and integrity of CPDA and CPDA Canvass.

43.      Therefore, CSS was in a confidential relationship with CPDA and CPDA Canvass, and CPDA and CPDA Canvass each owed an equitable duty to CSS, to protect the employees in the interests of all parties and the employees themselves by providing necessary information in a timely way.

44.     CPDA and CPDA Canvass breached that equitable duty to CSS intentionally, with malice and/or with reckless disregard for the rights of CSS, by deceiving CSS (about CPDA Canvass' ability to perform its obligation under the Contract and about the facts relating to the hours worked by the employees); violating CSS' confidence; and injuring the public interest in preventing wage theft and ensuring that employees are timely paid and have their benefits covered, and that governmental benefits such as workers compensation and unemployment insurance are properly funded.

45.     Accordingly, CPDA and CPDA Canvass are jointly and severally liable for constructive fraud perpetrated on CSS.

10

46.     As a result of the constructive fraud perpetrated on CSS, CSS has suffered actual damages in the amount of $300,000.

47.     Not only did CPDA deliberately and knowingly fail to provide required information in a timely way, CPDA affirmatively encouraged its affiliates to disrupt CSS's ability to calculate payroll by failing and refusing to provide initial documentation needed to hire canvassers and then failing and refusing to provide accurate information about hours worked in a timely way.

48.     CPDA and CPDA Canvass knew that their conduct would not only injure CSS but would injure the workers employed by CSS to carry out CPDA's programs and operations; and CSS informed CPDA that the conduct of CPDA and CPDA Canvass would also injure other CSS clients.

49.     The conduct of CPDA and CPDA Canvass  was characterized by willful and knowing wrongdoing, and clearly manifested intent to inflict injury on CSS, to defraud CSS, and to injure the workers.  The conduct of CPDA and CPDA Canvass thus demonstrated actual malice.

50.     Accordingly, their conduct warrants the award of punitive damages against CPDA and CPDA Canvass.

WHEREFORE,  Plaintiff prays for the following relief:

1. Enter judgment on each of the causes of action asserted herein.

2. Award Plaintiff actual damages of $300,000;

3. Award Plaintiff punitive damages for the count of Constructive Fraud, in an amount to be determined at trial;

4. Award Plaintiff interest on any damages awarded;

11

5. Order Defendant to pay Plaintiffs' costs incurred in bringing and prosecuting this

action;

6. Award such additional relief as the Court may deem just and proper.

Respectfully submitted,


Dated:  June 12, 2020                    Respectfully submitted,



   __/s/ Joseph E. Sandler

Joseph E. Sandler
Mark Lancaster
SANDLER REIFF LAMB ROSENSTEIN & BIRKENSTOCK, P.C.
1090 Vermont Ave., N.W  Suite 750
Washington, D.C. 20005
Telephone: (202) 479-1111
Fax: (202) 479-1115
sandler@sandlerreiff.com
lancaster@sandlerreiff.com

Attorneys for Collective Shared Services, LLC